**Harold INMAN, et ux.,**
**Plaintiffs/Appellants,**

**v.**

**ALUMINUM COMPANY OF AMERICA,**
**Defendant/Appellee.**

Court of Appeals of Tennessee,
Western Section, at Knoxville.

June 7, 1985.

Application for Permission to Appeal
Denied by Supreme Court ·
Sept. 3, 1985.

J.D. Lee, Knoxville, for plaintiffs/appellants.

Hugh W. Morgan of Kramer, Johnson, Rayson, McVeigh & Leake, Knoxville, for defendant/appellee.

TOMLIN, Judge.

This is a personal injury case. Harold Inman and his wife, as plaintiffs,[1] brought suit against the defendant, Aluminum Company of America, for personal injuries sustained by him when he fell from a platform on a tower on defendant's premises. At the time of the injury, plaintiff was an employee of Invirex Demolition, Inc. (hereinafter "Invirex"). He was participating in the demolition of some obsolete portions of defendant's plant by the use of a cutting torch when a portion of the structure collapsed, causing him to fall to the ground. A jury trial was had in the Circuit Court of Knox County. The trial judge granted a summary judgment in favor of defendant on all theories of liability presented by plaintiff except common law premises liability. The case went to the jury on this theory, and the jury returned a verdict for defendant. The principal issue presented by plaintiff, as stated in the briefs of both parties, is: "Whether the trial court properly excluded from evidence the contract between Invirex and Alcoa which conferred third-party creditor beneficiary status on Plaintiff, and imposed a duty upon Alcoa to provide Plaintiff safety belts, nets and adequate safety measures and supervision." We hold that the trial court was not in error in excluding the proffered evidence, and we affirm.

1. Plaintiff will be referred to hereafter in the singular, having reference to Mr. Inman as the injured person.

We will delve into the factual arena a bit more to give the reader a slightly better understanding of what took place. It should be kept in mind, however, that plaintiff does not in any way challenge the jury verdict, nor does he challenge any aspect of the trial judge's charge nor any of the evidence admitted by the trial judge. The sole issue again is whether or not the trial judge erred in refusing to admit the proffered evidence.

Invirex, a demolition contractor, entered into a contract with defendant for the demolition and removal of certain structural steel and masonry buildings at defendant's South Plant in Alcoa, Tennessee. Plaintiff was employed by Invirex as a "burner, one who operates a cutting torch in the demolition process. It was stipulated between the parties that Invirex was working under a written contract with defendant, that plaintiff was employed by Invirex, and that plaintiff was injured while working as an employee of Invirex on defendant's premises. It was also stipulated that plaintiff had received worker's compensation benefits for his disability and medical expenses.

At the time of his injury, plaintiff and a fellow employee of Invirex were standing at opposite sides of a tower on a catwalk, a substantial distance off the ground, engaged in the cutting of beams supporting a canopy or roof over the tower. When a portion of the tower supported by the beams being cut by plaintiff and his fellow employee fell, it struck the tower. The force of the impact caused the steel plate forming the floor of that section of the catwalk on which plaintiff was located to disengage, causing him to fall to the ground. The fall resulted in substantial personal injuries to plaintiff. After plaintiff fell, his safety belt was found on the ground near his body; it had not been engaged to any portion of the structure by plaintiff, and there were no safety nets in place. However, there was testimony to the effect that where persons engaged in demolition were "dropping" or causing the structures above the ground being demolished to fall to the ground, it was impracti-cal to use safety nets because the structures being felled would fall into the nets.

Plaintiff contends that certain safety standards governing the use of safety belts and tie-off lines were incorporated into the contract between Invirex and defendant by reference. He also contends that by that contract, there was created an additional contractual duty from defendant to the employees of Invirex to maintain and dictate certain safety standards for Invirex employees and to mandate the provision of safety equipment and the use of that safety equipment by the employees of Invirex, an independent contractor.

The pertinent portions of the contract between Invirex and defendant read as follows:

ARTICLE I. STATEMENT OF WORK.

The Contractor shall complete, and shall furnish all supervision, labor, materials, tools, equipment, unloading, hauling, taxes, insurance and all other things necessary (unless otherwise herein provided) for the completion of the demolition of certain structural steel and masonry buildings, concrete foundations to plant grade and removal of miscellaneous equipment in the South Plant of Owner's Alcoa, Tennessee Operations, as herein specified.

ARTICLE II. CONTRACT DOCUMENTS.

Work shall be performed in accordance with this Contract and the following documents all of which by reference thereto, are incorporated herein and made a part hereof:

A. General Conditions, Form 1060, Pages A–1 through A–10, revised 1976 June.

. . . .

ARTICLE VI. SOLE AGREEMENT.

This Contract, including the other documents referred to in ARTICLE II. CONTRACT DOCUMENTS., hereof, constitutes the entire agreement between the Contractor and the Owner. . . .

In addition to the contract, plaintiff sought to have the trial court find that an

additional contractual duty was created on the part of defendant by virtue of the safety standards that were incorporated by reference into this contract. This document, which appears as Exhibit 28 in the record, was presented to the trial court but was excluded by it from the jury, along with the contract. It bears the legend "Alcoa Engineering Standard Safety Belt Tie-Off Regulations."

### 1. SCOPE

Over the years, Alcoa has had a number of employees seriously or fatally injured when they have fallen to a level below where they were working. To prevent such accidents, this standard establishes safety belt tie-off regulations to be followed by EMPLOYEES working in areas from which they can fall to another level 8 feet ... or more below. On occasion, tie-off may be necessary at lesser heights.

This standard shall cover working on ladders, cranes, girders, machinery, equipment, roofs, tanks, pits, etc. (emphasis supplied).

On the face page of these standards we find the following:

This standard is the property of Aluminum Company of America and must be returned on request. It shall not be reproduced or copied, in whole or in part, or used on behalf of others than Aluminum Company of America or its subsidiaries, without permission.

This engineering standard is provided solely for the purpose of disclosing Alcoa's approach, and is not intended to be a recommendation for any recipient other than Alcoa. No warranties, guarantees or representations, express or implied are made as to the utility or effectiveness of the methods, processes, products or procedures described or recommended herein.

We have not been able to clearly ascertain from the record how these engineering standards were actually incorporated by reference into the contract between Invirex and defendant. However, since we find no objection made by counsel for defendant as to their being considered by the trial court along with the contract, we will treat them as being so referenced under ARTICLE II, quoted above.

The trial court would not permit the introduction of either the contract or the engineering standards through which plaintiff attempted to assert an additional theory of liability against the defendant. In so doing, the court found that the plaintiff's status as a business invitee was sufficient as a matter of law to permit the jury to find that defendant owed some duty of protection to plaintiff as an employee of an independent contractor.

In the case of *Dill v. Gamble Asphalt Materials,* 594 S.W.2d 719 (Tenn.Ct.App. 1979) *cert. denied* (1980), Presiding Judge Parrot, writing for the Eastern Section of our Court, stated:

In any action grounded in negligence, the existence or nonexistence of a duty on the part of the defendant "... is entirely a question of law, to be determined by reference to the body of statutes, rules, principles, and precedents which make up the law; *and it must be determined only by the court."* (Emphasis added.) W. Prosser, Law of Torts, § 37 (4th ed. 1971).

*Id.* at 721.

In *Dill,* the Court relied in part on an opinion of this Court in *International Harvester Co. v. Sartain,* 32 Tenn.App. 425, 222 S.W.2d 854 (1948), observing that:

[T]he Tennessee Court of Appeals set forth the general rule that an employer is not ordinarily liable for the negligent acts of his independent contractor. Then, the Court further provided one of the numerous exceptions to the general rule which sheds light on the duty owed by the employer of an independent contractor:

... an employer is not liable for an injury resulting from the performance of work given over by him to an independent contractor, unless ... the injury ... was due to some specific act of

negligence on the part of the employer himself.

In other words, despite the employer-independent contractor relationship, the employer still has the duty not to act negligently and will be liable to third parties for injuries proximately caused by his own negligence. The trial court's charge as to Gamble's duty was, therefore, without fault despite the existence of the employer-independent contractor relationship.

*Id.* 594 S.W.2d at 722.

Having established that it is a trial court's responsibility to determine the legal duties in existence between the parties in litigation, we next consider the status of the plaintiff in this regard. It is well defined in the case of *Dempster Brothers, Inc. v. Duncan,* 61 Tenn.App. 88, 452 S.W.2d 902, *cert. denied* (1969). In that case, the Eastern Section, speaking through Judge Cooper, now Chief Justice of our Supreme Court, stated:

The status of an employee of an independent contractor, while performing work on the premises of the owner-contractee, is that of an invitee, so long as the employee (1) is using such portion of the premises as reasonably comes within the limits of the invitation, (2) during the time the invitation reasonably extends, and (3) for the purpose reasonably intended by the invitation....

As the consequence of the classification of an employee of the independent contract (sic, contractor) as an invitee, the owner-contractee is under the duty to exercise reasonable care to see that the employee has a reasonably safe place in which to work. *Shell Oil Co. v. Blanks,* supra. [46 Tenn.App. 539, 330 S.W.2d 569, *cert. denied* (1959)]. And, where the worker (sic, owner)-contractee, has actual or constructive knowledge of latent or potential dangers on the premises, he "owes a duty to give warning of, or use ordinary care to furnish protection against, such dangers to employees of the contractor or subcontractors who are

without actual or constructive notice of the dangers." [citations omitted].

The owner-contractee's duty arises out of his superior knowledge of the dangerous condition. of his premises and he is not liable for injuries sustained from dangers that are obvious, reasonably apparent or as well known to the invitee as to the owner. [citing cases].

*Id.* 452 S.W.2d at 906.

In charging the jury, the trial court stated correctly that as a matter of law it was an established fact that plaintiff was an employee of an independent contractor, Invirex, and that he was an invitee on the premises.

That portion of the charge given by the trial court material to the issue before us is as follows:

If the defendant, a corporation—and I'll allude to that a little bit later—which acts through its agents, servants and employees, a legal entity, if the defendant was guilty of an act or omission and if the defendant, by the exercise of ordinary care, under the premises liability theory, could have anticipated or foreseen that an accident or injury of such a nature as that which happened, if any, and that it would result—and it would happen as a result of negligence on the part of the defendant by acts or omission, if you so find, then of course the defendant would be guilty of negligence, and if such negligence, if any, on the part of the defendant who acts through its agents, servants and employees, if it was the proximate cause of the injuries and damages complained of, then of course, the defendant would be liable.

. . . .

Now, let's talk about negligence a little bit more in detail. Negligence is the doing of some act which a reasonably prudent person would not do, or the failure to do something which a reasonable person would do when actuated by those considerations which ordinarily regulate the conduct of human affairs. In other words, it is the failure to use ordinary care under the circumstances in the

management of one's property or person. Ordinary care is that care which persons of ordinary prudence exercise in the management of their own affairs in order to avoid injury to themselves or others.

Now, ordinary care is not an absolute but a relative term. That is to say, in deciding whether ordinary care was exercised in a given situation, the conduct in question must be considered in light of all the surrounding circumstances as shown by the evidence. The proof in each case. Inasmuch as the amount of care used by the ordinarily prudent person varies in proportion to the danger known to be involved in what is being done, it follows that in the exercise of ordinary care the amount of caution required will vary with the nature of what is being done and all of the surrounding circumstances. To explain it another way, as the danger that should reasonably be apprehended increases, so does the amount of care required by the law. It also increases. Now, before you find Alcoa negligent, you must determine whether its people breached a duty owed to Mr. Inman; and thus, whether there was any negligence as just defined to you.

Now, foreseeability again is the test for negligence, and therefore the question you must decide is whether the defendant's conduct created an unreasonable risk of harm to Mr. Inman. If injury to the plaintiff could have been foreseen or anticipated by Alcoa's personnel because of the corporation's acts through its agents, servants and employees, then there was a duty to use care, and you may find such defendant was negligent if it breached that duty as you so find. That is to say, if Alcoa's personnel could have foreseen that some harm of a like general character might result to the plaintiff from its acts or omissions, and that resulting injury was within the reasonable range of the risk created by such actual acts or omissions, then a duty existed, and you may find that Alcoa was

negligent if that duty was breached as you so find under the law.

We are of the opinion that the trial judge properly charged to the jury as to the duty of defendant to plaintiff under the premises liability theory. In *Glenn v. Conner*, 533 S.W.2d 297 (Tenn.1976), our Supreme Court declared that "[o]rdinarily, once the court determines that a defendant is operating under a legal duty, it is for the jury to determine if the actions by the defendant were satisfactory in discharging that duty." *Id.* at 302. This the jury has done.

■ Our interpretation of the contract and the accompanying engineering standards is simply that independent contractor Invirex bound itself to the owner-contractee Alcoa to do the work in a safe manner. The contract, in essence, contracted Invirex to adhere to certain safety standards recommended to Invirex by Alcoa. They were not specific duties that defendant bargained with Invirex to perform, nor did the contract create any duty for defendant to supervise Invirex or its employees. The trial court clearly and correctly determined that the contract did not create any actionable legal duties running from defendant to plaintiff. Thus, the contract became immaterial to the trial and the trial court properly proceeded on the basis of common law premises liability.

■ It should also be observed that the question of the admissibility of evidence rests within the sound discretion of the trial court, and its decisions in that regard will be reversed only by a showing of an abuse of that discretion. *Strickland v. City of Lawrenceburg*, 611 S.W.2d 832 (Tenn.Ct.App.1980) *cert. denied* (1981). We are of the opinion that the trial court did not abuse that discretion in this case.

In light of our disposition of the issue raised by plaintiff, we find it unnecessary to pass upon the issues raised by appellee on appeal to the effect that the trial court erred in failing to direct a verdict in favor of defendant, and that the trial court erred in not holding that this action was barred by Tennessee Worker's Compensation stat-

utes. The judgment of the trial court is affirmed. Costs in this cause are taxed to plaintiff, for which execution may issue, if necessary.

CRAWFORD and HIGHERS, JJ., concur.